IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.  Criminal Action No. 2:23-cr-89

DERICKSON LAWRENCE,
        Defendant.

## OPINION

This matter comes before the Court on a motion for a new trial filed by the defendant, Derickson Lawrence. (ECF No. 94.) Lawrence asserts that, after trial, he discovered new evidence that the government wrongly withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (the "*Brady* evidence" or "*Brady* violations"). He also asserts that the Court erred in various other ways that support granting him a new trial (the "non-*Brady* arguments" or "non-*Brady* grounds"). In his pursuit of a new trial, Lawrence makes related requests for an evidentiary hearing, copies of certain portions of the trial transcripts, and subpoenas. (ECF Nos. 94, 106, 107.)

The Court held a hearing on Lawrence's motions on September 27, 2024. As the Court explained at the hearing, Lawrence has not demonstrated that the *Brady* evidence, if it even exists, is new or material. He has also failed to timely raise the non-*Brady* arguments. The Court, therefore, denies Lawrence's motions. (ECF Nos. 94, 106, 107.)

### I. BACKGROUND

#### A. *Offense Conduct*

##### 1. *Paycard Scheme*

Lawrence's company, MarketView Resources, Inc. ("MarketView"), contracted with Both Inc., a management company serving various Golden Corral locations, to serve as a payroll services intermediary. Both Inc.'s Golden Corral employees had two options for receiving their

wages: (1) direct deposit or (2) debit card ("paycard"). For employees who chose the latter option, Both Inc. transferred funds into MarketView's account at Wells Fargo (the "Settlement Account"). MarketView, working in coordination with a third-party paycard vendor, STAR Processing ("STAR"), then mailed paycards to the employees. The employees used the paycards to withdraw their wages from the pooled Settlement Account. MarketView charged Both Inc. approximately $3,000 per month for these services.

Rather than hold the funds for Both Inc.'s employees as he had contracted, Lawrence instead transferred hundreds of thousands of dollars from the Settlement Account to his own personal bank accounts and that of his romantic partner.[1] Both Inc. did not have a way to monitor transactions in the Settlement Account, but suspected fraud after receiving complaints from employees that their paycards stopped working. A grand jury later indicted Lawrence on nine counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of mail fraud, in violation of 18 U.S.C. § 1341, in connection with this fraudulent scheme.

### 2. *PPP Scheme*

After the grand jury indicted Lawrence for the Paycard Scheme, the government learned that he also submitted false statements related to MarketView's payroll and employees so he could obtain funds through the U.S. Small Business Administration's ("SBA") Paycheck Protection Program ("PPP"). On December 13, 2023, the grand jury returned a superseding indictment charging Lawrence with the same ten counts related to the Paycard Scheme, while adding an additional wire fraud count for the PPP Scheme.

---

[1] Lawrence did not always make direct transfers. For example, he sometimes transferred funds from the Settlement Account to an intermediary account that he controlled; transferred the funds from the intermediary account to his personal brokerage account; and then transferred the funds from his personal brokerage account to his personal checking account.

### *B. Trial*

The government introduced a wide array of evidence at trial to support its fraud charges against Lawrence. For example, the jury heard testimony from victims who were affected by Lawrence's scheme and reviewed Lawrence's emails and bank transactions. On March 22, 2024, the jury convicted Lawrence of all eleven counts in the superseding indictment.

### *C. Post-Trial Proceedings*

Nearly three months after trial, Lawrence moved to represent himself during post-trial proceedings. After conducting a hearing on June 21, 2024, the Court granted Lawrence's motion. In so doing, the Court relieved the Office of the Federal Public Defender ("FPD") of its duty to represent Lawrence but kept the FPD "on the case as stand-by counsel." (ECF No. 87.)

Lawrence filed the instant motion for a new trial on August 5, 2024. Lawrence focuses his motion on three alleged *Brady* violations, arguing that the government withheld information about (1) "arrangements" it made with Ellsworth, (2) Both Inc.'s closure of all of its Golden Corral locations in December 2019, and (3) Both Inc.'s use of paycard vendors other than STAR. He requests an evidentiary hearing on these issues. Lawrence also raises four non-*Brady* arguments, contending that the government made improper statements during closing remarks, and that the Court improperly admitted evidence, should have severed the trial for the Paycard Scheme from that of the PPP Scheme, and erred when instructing the jury. Lawrence requests an evidentiary hearing on these issues, seeks copies of certain trial transcript excerpts so he may review them in advance of the requested hearing, and asks for subpoenas to compel the testimony of certain

witnesses at the requested hearing.[2] The Court conducted a hearing on September 27, 2024, in which it heard arguments from the parties on Lawrence's requests.

## II. DISCUSSION

Lawrences moves for a new trial based on newly discovered evidence and other grounds. "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). At the same time, "these are highly disfavored motions that a court should grant only 'sparingly.'" *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021) (quoting *United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017)). A court, therefore, should not overturn a jury's verdict "except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 216–17 (4th Cir. 2006) (quoting *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)). Lawrence's argument related to the alleged *Brady* violations fails to meet this high standard because he has not presented new, material evidence warranting a new trial. His request for an evidentiary hearing, meanwhile, appears as nothing more than an impermissible fishing expedition. Finally, Lawrence has not timely requested a new trial on his non-*Brady* grounds.

### A. *Lawrence's Claims of Newly Discovery Evidence*

"To establish his entitlement to a new trial based on newly-discovered evidence, the defendant must satisfy a five-prong test by demonstrating that '(1) the evidence is newly discovered; (2) the defendant exercised due diligence; (3) the newly discovered evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would

---

[2] Lawrence seeks to subpoena four individuals who testified on the government's behalf at trial: (1) Dodd Ellsworth, (2) Pamela Baker, (3) Gary Carter, and (4) Anthony Sterling. (ECF No. 94, at 23.) He also seeks a subpoena for Michael Dashiell, a forensic accountant, and separately asks the Court for funds to hire Dashiell as an expert to dispute the "actual loss" amount in this case. (ECF No. 107, at 4.)

4

probably result in an acquittal at trial.'" *Ali*, 991 F.3d at 571 (quoting *United States v. Moore*, 709 F.3d 287, 292 (4th Cir. 2013)). When claiming that evidence was newly discovered because the government wrongly withheld it in violation of *Brady*, a defendant similarly must "show (1) that the undisclosed information was favorable, either because it was exculpatory or because it was impeaching; (2) that the information was material; and (3) that the prosecution knew about the evidence and failed to disclose it." *United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015); *see United States v. Bartko*, 728 F.3d 327, 339–40 (4th Cir. 2013) (denying two motions for a new trial because the defendant failed to satisfy all three prongs of the *Brady* test). "Evidence is material if there is a 'reasonable probability that its disclosure would have produced a different result.'" *Parker*, 790 F.3d at 558 (quoting *Bartko*, 728 F.3d at 340). "[R]ank speculation as to the nature of the allegedly suppressed materials . . . cannot establish a *Brady* violation." *United States v. Briscoe*, 101 F.4th 282, 297 (4th Cir. 2024) (quoting *United States v. Young*, 916 F.3d 368, 383 (4th Cir. 2019)).

Lawrence advances three claims of newly discovered evidence based on purported *Brady* violations. First, he claims that the government failed to disclose "arrangements" it made with Ellsworth. Second, he complains that the government failed to share information about Both Inc.'s closure of all of its Golden Corral restaurants around December 2019. Third, he argues that the government wrongly withheld evidence that Both Inc. used paycard vendors other than STAR.

### *1. The Government's Arrangement with Ellsworth*

Lawrence first asserts that the government wrongly failed to disclose an agreement it made not to prosecute Ellsworth in exchange for his favorable testimony. Prosecutors generally must disclose immunity deals or other forms of leniency that witnesses receive in exchange for their favorable testimony. *See Giglio*, 405 U.S. at 154–55; *Bartko*, 728 F.3d at 338. In *Bartko*, the

government failed to disclose the details of proffer and tolling agreements it made with several witnesses. *See* 728 F.3d at 338–39. The defendant argued that this amounted to a *Brady* violation warranting a new trial. *See id.* The Fourth Circuit held that the defendant sufficiently showed that the agreements "were impeaching and that the prosecution had the materials and failed to disclose them," thus satisfying the first and third elements of the *Brady* test. *Id.* at 338 (proffer agreements); *see id.* at 339 (tolling agreement). The Fourth Circuit did not, however, find this evidence material. *See id.* at 338–39. The proffer agreements constituted "cumulative" evidence, and even without them, the defense still thoroughly impeached the witnesses' credibility. *Id.* at 338–39. The testimony of the witness who received the tolling agreement, meanwhile, "was corroborated by substantial documentary evidence" and testimony from other witnesses. *Id.* at 340 (citation omitted). The Fourth Circuit accordingly upheld the district court's denial of the defendant's several motions for a new trial.

Lawrence presents even less evidence than the defendant in *Bartko* to support his request for a new trial. Lawrence posits that Ellsworth had "significant motives" to provide "false testimony" favorable to the government in exchange for leniency. (ECF No. 94, at 8, 27.) He then offers various theories to explain why no fraud occurred and why Ellsworth must have lied on the stand. But these theories, without any offer of proof, do not rise above mere speculation.[3] Lawrence accordingly fails to show that any new evidence related to an agreement between the government and Ellsworth existed.

Even if the government had offered such a deal to Ellsworth and failed to disclose it, Lawrence cannot demonstrate materiality. At trial, Ellsworth testified about emails he and

---

[3] For its part, the government maintains that it neither considered Ellsworth a target of its investigation nor offered him any deal for leniency. (ECF No. 100, at 6–7.)

6

Lawrence exchanged. The government could have admitted this documentary evidence under Federal Rules of Evidence 801(d)(2)(A) and (d)(2)(D) even without Ellsworth's testimony. *See United States v. Barbee*, 524 F. App'x 15, 18–19 (4th Cir. 2013). Moreover, the government presented evidence entirely separate from Ellsworth's testimony, such as bank records and testimony from paycard users, to prove Lawrence's fraud.[4] Thus, given Ellsworth's largely "cumulative" testimony, "there is no reasonable probability that the jury would have reached a different verdict." *Bartko*, 728 F.3d at 338–39.

### 2. *Both Inc.'s Closure of Several Golden Corral Locations*

Lawrence next argues that the government improperly withheld information about Both Inc.'s closure of its Golden Corral restaurants. Lawrence contends that the government presented evidence at trial indicating that Both Inc. operated 22 Golden Corral franchises in 2019, and accuses the government of failing to disclose that Both Inc. closed all of these locations by the end of that year. In Lawrence's eyes, Both Inc.'s "rapid shutdown" of Golden Corral locations in December 2019 shows that the company had decided to close its locations "much earlier" than September 2019, when it discovered Lawrence's fraud. (ECF No. 105, at 9.)

Lawrence does not present any evidence to show that Both Inc., in fact, closed all of its Golden Corral locations in December 2019.[5] Nor does he present any evidence to show that the government knew of Both Inc.'s wholesale closures at that time, if they even occurred at all to the

---

[4] Lawrence asserts that Ellsworth's testimony served as the government's "only source" for validating its restitution amount. (ECF No. 105, at 6.) But the government produced other evidence, such as Wells Fargo bank statements, to validate the restitution amount. In any event, the Court will address restitution with the parties separately.

[5] The record does not clearly establish how many Golden Corral locations Both Inc. operated in December 2019. The record only reflects that Both Inc. operated 22 such locations at some point in 2019, that it operated 12 such locations around the time of trial in March 2024, and that it closed its restaurants around April 2020 due to the COVID-19 pandemic.

7

degree Lawrence claims. Lawrence also fails to show that he or his prior counsel diligently sought to obtain this information, such as by subpoenaing Both Inc. for this information. His speculative theory, therefore, fails on numerous grounds.

In any event, the Court cannot discern how information of the Golden Corral closures would have materially affected Lawrence's defense or would have likely led to an acquittal. If anything, this evidence undermines Lawrence's position. Lawrence repeatedly asserts that MarketView "was 'inextricably intertwined" with Both Inc.'s day-to-day administrative business operations." (ECF No. 94, at 37; *see id.* at 39.) He then appears to contend that his decision not to continue working with Both Inc., coupled with Both Inc.'s high turnover rate, led to "the collapse of [Both Inc.'s] business operations." (*Id.* at 37.) But the government argued, and the jury agreed, that Both Inc. ended the business arrangement with MarketView after it learned of Lawrence's fraud. And if the two companies were as "inextricably intertwined" as Lawrence contends, Both Inc.'s struggles starting in late 2019 do more to bolster the prosecution's position— not Lawrence's defense—that Lawrence's illicit funneling of hundreds of thousands of dollars led Both Inc. to close at least some of its Golden Corral locations. Ultimately, whether the restaurants were open or closed does not affect the clear showing that Lawrence pocketed the employees' pay. Lawrence, therefore, offers no valid basis for a new trial based on the alleged Golden Corral closures.

### 3. *Both Inc.'s Use of Other Paycard Vendors*

Lawrence lastly argues that the government improperly withheld evidence of Both Inc.'s use of paycard vendors other than STAR. But he points to no actual evidence, such as the names of other paycard vendors, to support his suspicion. He also accuses yet another government

8

witness of lying under oath without providing any basis for such an accusation. As before, these speculative theories must fail. *See Briscoe*, 101 F.4th at 297.

Moreover, even if Both Inc. used other paycard vendors, Lawrence offers no proof—and the government does not concede—that the government possessed this information before trial. Nor does he detail any efforts he or his then-counsel took to diligently obtain this information, such as subpoenaing Both Inc. for this information. And even if Both Inc. used other vendors, it does not change the evidence that Lawrence stole money entrusted to him. His request for a new trial on this ground accordingly fails.

### B. *Lawrence's Request for an Evidentiary Hearing*

Lawrence requests an evidentiary hearing to "firm up" and "bolster" his largely speculative theories. (ECF No. 94, at 38, 52.) In connection with this request, he also seeks copies of portions of the trial transcripts and subpoenas to compel the testimony of certain individuals. "Just as the district court has broad discretion in resolving a new trial motion, so too does it enjoy discretion whether to hold an evidentiary hearing on the motion." *United States v. Smith*, 62 F.3d 641, 651 (4th Cir. 1995). "This is because 'the acumen gained by a trial judge over the course of the proceedings' makes the court 'well qualified' to rule on a motion for a new trial without an evidentiary hearing." *United States v. Tzeuton*, 370 F. App'x 415, 421 (4th Cir. 2010) (quoting *United States v. Hamilton*, 559 F.2d 1370, 1373–74 (5th Cir. 1977)). To that point, courts should not allow defendants to engage in post-trial fishing expeditions in search of *Brady* violations. *See United States v. Wolf*, 860 F.3d 175, 193 (4th Cir. 2017).

Here, the government introduced numerous witnesses from wide-ranging backgrounds, as well as hundreds of exhibits—including Lawrence's own emails and bank records—to support his conviction. Lawrence seeks to undercut this evidence by raising alternative defense theories and

9

by alleging various *Brady* violations. Since Lawrence produces no actual evidence to support his theories, however, his request for an evidentiary hearing, along with those for copies of the trial transcripts and subpoenas, appears as nothing more than an improper fishing expedition.[6] The Court will not grant an evidentiary hearing.

### C. The Timeliness of Lawrence's Motion

Finally, Lawrence has not timely raised his non-*Brady* grounds for a new trial. If a defendant relies on newly discovered evidence as the basis for his new trial motion, he must file the motion within three years of the verdict. Fed. R. Crim. P. 33(b)(1). The defendant otherwise must move for a new trial on any other ground within fourteen days of the verdict, Fed. R. Crim. P. 33(b)(2), unless he shows "excusable neglect," *United States v. Farris*, 834 F. App'x 811, 812 (4th Cir. 2021). When determining whether to consider a late filing for excusable neglect, courts must analyze "[1] the danger of prejudice [to the opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The defendant's reason for the delay carries the most weight in a court's analysis. *See id.*

Lawrence moves for a new trial not only based on newly discovered evidence, but also based on other evidence that he deems "important for the Court's consideration." (ECF No. 94, at 59.) Specifically, he argues that (1) the Court improperly admitted evidence, (2) the Court should have severed the trial for the Paycard Scheme from that of the PPP Scheme, (3) the government made improper statements during closing remarks, and (4) the Court erred when instructing the

---

[6] In his reply, Lawrence also requests an evidentiary hearing to address the proper amount of restitution in this case. As noted, the Court will address restitution with the parties separately. *See supra* note 4.

10

jury. The Court doubts these grounds have merit. But even if they do, Lawrence did not move for a new trial on these bases within the timeframe that Rule 33 requires. Because these grounds do not arise from newly discovered evidence, Lawrence had fourteen days to raise them. Yet, Lawrence moved for a new trial more than four months after the jury entered its verdict. The FPD represented Lawrence for three of those months, yet never filed a motion for a new trial, whether for newly discovered evidence or otherwise. And even after the Court granted Lawrence's request to represent himself in post-trial proceedings, he waited another six weeks to file the instant motion. Lawrence offers no excuse for this delay, so his request for relief on alternative grounds must fail.

### III. CONCLUSION

For the reasons set forth above and as stated from the bench, the Court denies Lawrence's motion for a new trial. (ECF No. 94.) For those same reasons, the Court also denies Lawrence's related motions for an evidentiary hearing, for copies of the trial transcripts, and for subpoenas. (ECF Nos. 94, 106, 107.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to Lawrence and to all counsel of record.

Date: 30 September 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge